PS 8 Revised 07
MD/TN Revised 04/12

# UNITED STATES DISTRICT COURT
## for the
## MIDDLE DISTRICT OF TENNESSEE

U.S.A. vs. Larry Parkhurst                                  Docket No. 0650 3:10CR00090 - 4

### Petition for Action on Conditions of Pretrial Release

COMES NOW Dariel S Blackledge-White, PRETRIAL SERVICES OFFICER presenting an official report upon the conduct of defendant Larry Parkhurst who was placed under pretrial release supervision by the Honorable Joe B. Brown sitting in the Court at **Nashville, Tennessee**, on April 28, 2010, under the following conditions: Please reference the attached Order Setting Conditions of Release.

Respectfully presenting petition for action of Court and for cause as follows:
Please reference page two of this document.

I declare under penalty of perjury that the foregoing is true and correct.

Dariel S Blackledge-White     Nashville, TN     July 3, 2012
U.S. Pretrial Services Officer     Place:     Date:

Next Scheduled Court Event

Event     Date

## PETITIONING THE COURT

☐ No Action                                ☒ To issue an order setting a hearing on the petition
☐ To Issue a Warrant                       ☐ Other

THE COURT ORDERS:
☐ No Action
☐ The Issuance of a Warrant.
  ☐ Sealed Pending Warrant Execution
    (cc: U.S. Probation and U.S. Marshals only)
☐ Other

☒ A Hearing on the Petition is set for

Monday July 16, 2012     10:00 am
Date                     Time

Considered and ordered this 9 day of July, 2012, and ordered filed and made a part of the records in the above case.

_____
Honorable Joe Brown
U. S. Magistrate Judge

Honorable Joe B. Brown
U.S. Magistrate Judge
Second Petition for Action on
PARKHURST, Larry
Case No. 3:10-00090-4
July 3, 2012

On April 28, 2010, defendant Larry Parkhurst appeared before Your Honor for an Initial Appearance as a result of being charged with violating Title 21 U.S.C. § 841(a)(1), to wit: Conspiracy to Distribute and Possess With Intent to Distribute LSD. He was released the same day on a personal recognizance bond with pretrial supervision.

**Special Conditions of Release:**

Please reference the attached Order Setting Conditions of Release.

**VIOLATION(S):**

**Violation No. 1: Not use or unlawfully possess a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner:**

On June 6, 2012, the defendant appeared before Your Honor and was ordered temporarily detained after he tested presumptive positive for marijuana during a drug screen administered in conjunction with his bond revocation hearing. This specimen was sent to Alere Laboratories (Alere), located in Gretna, Louisiana.

Mr. Parkhurst initially denied he used any illegal substances, but he later admitted he attended a party approximately three weeks prior where marijuana was present.

On June 9, 2012, Alere confirmed the presence of marijuana in the urine sample provided by the defendant.

On June 14, 2012, the defendant was placed back on pretrial supervision and ordered to submit urine screens each week to the U.S. Probation and Pretrial Services Office. He was released from custody and placed in Phase I drug testing, which provides for random urine screens to be submitted weekly.

On June 18, 2012, the defendant again tested positive for marijuana, and the specimen was submitted to Alere. The specimen was confirmed positive for marijuana on June 20, 2012, and a request for an interpretation of the nanogram levels was sent to Alere Laboratories.

On June 25, 2012, the defendant tested positive for marijuana, and the specimen was sent to Alere.

On June 26, 2012, the interpretation was returned and provided the nanogram levels for the specimens submitted as follows:

2

Honorable Joe B. Brown
U.S. Magistrate Judge
Second Petition for Action on
PARKHURST, Larry
Case No. 3:10-00090-4
July 3, 2012

| Date Collected | Specimen Number | THCA ng/mL | Creatinine mg/dL | Normalized THCA Value |
|---|---|---|---|---|
| 06/06/12 | B02060286 | THC = 294 | 55.5 | 529 ng THCA/mgCreatinine |
| 06/18/12 | B02060290 | THC = 262 | 220.1 | 119 ng THCA/mgCreatinine |

It was the opinion of the toxicologist that, even though the nanogram levels were decreasing, the defendant reused marijuana prior to the collection on June 18, 2012. This opinion was based on social use; the lack of significant decrease in the normalized level of drug present in the urine specimen collected on June 18, 2012; the length of time the donor continues to test positive after the specimen collected on June 6, 2012; and a urine half-life of 24 to 48 hours.

On June 28, 2012, Alere confirmed the specimen provided on June 25, 2012, was positive for the presence of marijuana.

**Current Status of Case:**

No trial date has been set as of this date.

**Probation Officer Action:**

As previously noted, on June 14, 2012, the defendant was placed in Phase I random drug testing. Since that time, he has submitted two urine screens which were confirmed positive for the presence of marijuana.

**Respectfully Petitioning the Court as Follows:**

Mr. Parkhurst has submitted two urine screens that were positive, and analysis revealed a high probability the defendant used marijuana after he was released from custody on June 14, 2012. Therefore, it is respectfully requested that the Court issue an Order setting a hearing on this Petition for Action.

Honorable Joe B. Brown
U.S. Magistrate Judge
Second Petition for Action on
PARKHURST, Larry
Case No. 3:10-00090-4
July 3, 2012

The U.S. Attorney's Office has been advised of the most recent violations and concurs with the recommendation of Pretrial Services.

Approved:

William Burton Putman

Supervisory U.S. Probation Officer

xc: Brent Hannafan, Assistant U.S. Attorney
Jonathan Farmer, Defense Counsel

# UNITED STATES DISTRICT COURT
for the
Middle District of Tennessee

| | |
|---|---|
| United States of America<br>v.<br>Larry Parkhurst<br><br>_____<br>*Defendant* | )<br>)<br>) Case No. 3:10-00090-4<br>)<br>)<br>) |

## ORDER SETTING CONDITIONS OF RELEASE

IT IS ORDERED that the defendant's release is subject to these conditions:

*LP* (1) The defendant must not violate federal, state, or local law while on release.

*LP* (2) The defendant must cooperate in the collection of a DNA sample if it is authorized by 42 U.S.C. § 14135a.

*LP* (3) The defendant must advise the court or the pretrial services office or supervising officer in writing before making any change of residence or telephone number.

*LP* (4) The defendant must appear in court as required and, if convicted, must surrender as directed to serve a sentence that the court may impose.

The defendant must appear at: _____
*Place*

on _____
*Date and Time*

If blank, defendant will be notified of next appearance.

*LP* (5) The defendant must sign an Appearance Bond, if ordered.

SCANNED

## ADDITIONAL CONDITIONS OF RELEASE

IT IS FURTHER ORDERED that the defendant's release is subject to the conditions marked below:

( ) (6) The defendant is placed in the custody of:
Person or organization _____
Address *(only if above is an organization)* _____
City and state _____ Tel. No. _____
who agrees to (a) supervise the defendant, (b) use every effort to assure the defendant's appearance at all court proceedings, and (c) notify the court immediately if the defendant violates a condition of release or is no longer in the custodian's custody.

Signed: _____     _____
           Custodian             Date

(✓) (7) The defendant must:
2P (✓)(a) submit to supervision by and report for supervision to the **PTS as directed**,
       telephone number **615 736-5771**, no later than _____.
2P (✓)(b) continue or actively seek employment.
( ) (c) continue or start an education program.
( ) (d) surrender any passport to: _____
2P (✓)(e) not obtain a passport or other international travel document.
2P (✓)(f) abide by the following restrictions on personal association, residence, or travel: **Travel restricted to Middle District TN without prior approval.**
( ) (g) avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, including: _____
( ) (h) get medical or psychiatric treatment: _____
( ) (i) return to custody each _____ at _____ o'clock after being released at _____ o'clock for employment, schooling, or the following purposes: _____
( ) (j) maintain residence at a halfway house or community corrections center, as the pretrial services office or supervising officer considers necessary.
2P (✓)(k) not possess a firearm, destructive device, or other weapon.
2P (✓)(l) not use alcohol (✓) at all ( ) excessively.
2P (✓)(m) not use or unlawfully possess a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner.
2P (✓)(n) submit to testing for a prohibited substance if required by the pretrial services office or supervising officer. Testing may be used with random frequency and may include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of prohibited substance screening or testing. The defendant must not obstruct, attempt to obstruct, or tamper with the efficiency and accuracy of prohibited substance screening or testing.
2P (✓)(o) participate in a program of inpatient or outpatient substance abuse therapy and counseling if directed by the pretrial services office or supervising officer.
( ) (p) participate in one of the following location restriction programs and comply with its requirements as directed.
    ( ) (i) **Curfew.** You are restricted to your residence every day ( ) from _____ to _____, or ( ) as directed by the pretrial services office or supervising officer; or
    ( ) (ii) **Home Detention.** You are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities approved in advance by the pretrial services office or supervising officer; or
    ( ) (iii) **Home Incarceration.** You are restricted to 24-hour-a-day lock-down at your residence except for medical necessities and court appearances or other activities specifically approved by the court.
( ) (q) submit to location monitoring as directed by the pretrial services office or supervising officer and comply with all of the program requirements and instructions provided.
    ( ) You must pay all or part of the cost of the program based on your ability to pay as determined by the pretrial services office or supervising officer.
2P (✓)(r) report as soon as possible, to the pretrial services office or supervising officer, every contact with law enforcement personnel, including arrests, questioning, or traffic stops.
2P (✓)(s) **Permit PTS to visit you at home or elsewhere and permit the confiscation of any contraband observed in plain view of the officer.**
2P ✓ (t) **Refrain from obstructing or attempting to obstruct or tamper in any fashion with the efficiency and accuracy of any prohibited substance testing which is required as a condition of release.**
2P ✓ (u) **The defendant will report to his pretrial services officer on a weekly basis to be drug tested at the Nashville office. The defendant will call each day after 5pm to determine if he is to report the following day.**

## ADVICE OF PENALTIES AND SANCTIONS

TO THE DEFENDANT:

YOU ARE ADVISED OF THE FOLLOWING PENALTIES AND SANCTIONS:

Violating any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of your release, an order of detention, a forfeiture of any bond, and a prosecution for contempt of court and could result in imprisonment, a fine, or both.

While on release, if you commit a federal felony offense the punishment is an additional prison term of not more than ten years and for a federal misdemeanor offense the punishment is an additional prison term of not more than one year. This sentence will be consecutive (*i.e.*, in addition to) to any other sentence you receive.

It is a crime punishable by up to ten years in prison, and a $250,000 fine, or both, to: obstruct a criminal investigation; tamper with a witness, victim, or informant; retaliate or attempt to retaliate against a witness, victim, or informant; or intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the court. The penalties for tampering, retaliation, or intimidation are significantly more serious if they involve a killing or attempted killing.

If, after release, you knowingly fail to appear as the conditions of release require, or to surrender to serve a sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed. If you are convicted of:
   (1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more – you will be fined not more than $250,000 or imprisoned for not more than 10 years, or both;
   (2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years – you will be fined not more than $250,000 or imprisoned for not more than five years, or both;
   (3) any other felony – you will be fined not more than $250,000 or imprisoned not more than two years, or both;
   (4) a misdemeanor – you will be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender will be consecutive to any other sentence you receive. In addition, a failure to appear or surrender may result in the forfeiture of any bond posted.

### Acknowledgment of the Defendant

I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and surrender to serve any sentence imposed. I am aware of the penalties and sanctions set forth above.

_____
*Defendant's Signature*

_____
*City and State*

### Directions to the United States Marshal

( ✓ ) The defendant is ORDERED released after processing.
( ) The United States marshal is ORDERED to keep the defendant in custody until notified by the clerk or judge that the defendant has posted bond and/or complied with all other conditions for release. If still in custody, the defendant must be produced before the appropriate judge at the time and place specified.

Date: 6/14/2012

_____
*Judicial Officer's Signature*

Joe B. Brown, US Magistrate Judge
*Printed name and title*

DISTRIBUTION:   COURT   DEFENDANT   PRETRIAL SERVICE   U.S. ATTORNEY   U.S. MARSHAL



Toxicology Services
1111 Newton Street
Gretna, Louisiana USA
800-433-3823 Toll-free Phone
504-361-8989 Phone
504-361-8298 Fax

June 26, 2012

To:   Bill Lord

RE:   Request for THCA Interpretation for Donor: Parkhurst 21369

This memo is in response to your request for additional information concerning the length of time that marijuana can stay in the body.

Marijuana is stored in the body longer than many other drugs. Depending upon the type of use of the drug, the length of time it can stay in the body fluctuates. Recent scientific data indicate that a person who is a chronic user, meaning that he/she uses the drug several times a day every day, may continue to release the drug into the urine for up to four weeks. The social user, meaning an individual who smokes once per week, will eliminate the drug in less than a week. Elimination of drug is expressed in terms of a half-life, which is the length of time it takes for half of the drug to be eliminated. The average half-life for marijuana is 24 to 48 hours for an occasional user and 48 to 72 hours for a chronic user.

Alere utilizes Gas Chromatography coupled with Mass Spectrometry (GC/MS) to identify 11-nor-9-carboxy-delta-9-tetrahydrocannabinol (THCA), the primary metabolite from marijuana use.

When evaluating specimens close in time, urine concentration is a factor which can complicate the interpretation. As urine concentration fluctuates, drug level fluctuates; therefore, correction for the dilution or concentration of the urine is essential prior to evaluating whether a donor has reused the drug in a span of time between drug test collections. The correction for concentration is called a creatinine normalization procedure. A random urine creatinine should be in the range of 100 to 200 mg/dl with an average of approximately 170 mg/dl. To compensate for the dilution effect, the drug concentrations are normalized and reported as nanogram of drug per milligram of creatinine

The specimens listed below were submitted for analysis at Alere Toxicology Services, Inc. yielding the following results:

| Date Collected | Specimen Number | THCA ng/mL | Creatinine mg/dL | Normalized THCA Value |
|---|---|---|---|---|
| 6/06/12 | B02060286 | 294 | 55.5 | 529 ngTHCA/mgCreatinine |
| 6/18/12 | B02060290 | 262 | 220.1 | 119 ngTHCA/mgCreatinine |

Officer Bill Lord provided information that the offender was a social user of marijuana claiming last use on 5/16/12.

This opinion letter will be based on social use. Social use is defined as smoking one marijuana cigarette per week. Although the normalized value has decreased in concentration, this does not automatically indicate the offender did not reuse marijuana. The half-life of the drug and usage patterns of the offender must be taken into consideration. In addition, recent

research by Drs. Huestis and Smith (*Journal of Analytical Toxicology* 2009) has clearly demonstrated the expected ratio for clearance in social users. The research demonstrates the clearance of THCA from the urine of a social user is 5 days using a 15 ng/mg cut off level. The time period between collections for the specimens listed above was 12 days.

It is my opinion that this offender reused marijuana prior to the collection on 6/18/12. I base this opinion on social use, the lack of significant decrease in the normalized level of drug present in the urine specimen collected on 6/18/12, the length of time the donor continues to test positive after the specimen collected on 6/6/12 and a urine half-life of 24-48 hours.

Please do not hesitate to contact me if additional information is needed. I can be reached at 800-433-3823 #68291 or via email to at pat.pizzo@alere.com.

Regards,

Pat Pizzo, B.S., DABFE
Director of Toxicology
Alere Toxicology

∗ ∗ ∗ Communication Result Report ( Jun. 22. 2012 10:51AM ) ∗ ∗ ∗

1)
2)

Date/Time: Jun. 22. 2012 10:50AM

| File No. Mode | Destination | Pg(s) | Result | Page Not Sent |
|---|---|---|---|---|
| 1257 Memory TX | 915043618298 | P. 1 | OK | |

Reason for error
 E. 1) Hang up or line fail      E. 2) Busy
 E. 3) No answer                 E. 4) No facsimile connection
 E. 5) Exceeded max. E-mail size

---



**Toxicology Services**
1111 Newton Street
Gretna, Louisiana 70053 USA
800-433-3823 Toll-free Phone
504-361-8989 Phone
504-361-8298 Fax

## Request for Clin 1100 Interpretation

Date: June 22, 2012

| | | |
|---|---|---|
| Contact: | Alere Toxicology Government Services | From Contact Information for AOUSC Contact Name: Bill Lord |
| | | Office: Middle Tennessee Pretrial Services |
| Fax: | 504 361 8298 | Fax: 615-736-5519 |
| Phone: | 800 433 3823 x2 | Phone: 615-736-5771 |
| Email: | uscourts@alere.com | Email: William_lord@tnmp.uscourts.gov |

AOUSC Probation and Pretrial offices may use this form to request quantitative information for individuals within their programs requiring interpretations. Please provide the Donor Name, Date Collected, and Specimen ID for each test result you wish to have included in your interpretation letter. In order to provide an accurate interpretation of results please complete the bottom portion of this request as well.

| | | | For Alere Toxicology Use ONLY | | | |
|---|---|---|---|---|---|---|
| Donor Name | Date Collected | Specimen ID | Drug | Level | Creatinine | Specific Gravity |
| Parkhurst | 6-8-12 | B02060286 | | | | |
| | 6-18-12 | B02060290 | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

When did the donor state last usage: May 16th   Prescriptions: N/A
Type of use  Social

www.aleretoxicology.com

____ Medication list on ~~~

Local Form Revised 08/01/2011    Substance Abuse Testing Record    031871

Date: 6 25 1~    Assigned Officer: OBW

Name of Defendant/Offender: Cally Calhoun    Docts: 21369

## Part I-Questions About Drug Usage

I certify that I am the person listed above and was present during the submission and testing of my urine sample by the on-site drug testing product listed below. Further, I understand that false statements may result in revocation of my supervision in addition to 5 years imprisonment for making false statements (18 U.S.C. 1001), and that all the information furnished is true and correct.

{ } Yes  {X} No    Since your last contact with U.S. Probation, have you used any illegal drugs or any medications not prescribed to you?

If answered "yes" above, complete back of this form

X _____    _____
Defendant/Offender    Monitoring Official

## Part II-Type of On-Site Drug Test Product Administered and Results

{X}    **Redwood I-Cup**    Panel tested-- THC, Cocaine, Opiates, Methamphetamine, Amphetamine, PCP, Benzodiazepine, Oxycodone
       Results:    {X} Positive { } Negative
       Specify which drug indicated: THC    B02060292

{ }    **Oralert Saliva Test**    Panel tested: THC, Cocaine, Opiates, Methamphetamine, Amphetamine, Benzodiazepine
       Results:    { } Positive { } Negative
       Specify which drug indicated: _____

{ }    **PA202 Digital Refractometer (Serial #PA20205515)**    Calibration Test: Y  N (circle one)

       Specific Gravity: _____    Normal Range: 1.004-1.039    Diluted _____

NOTE: Positive results require confirmation by a lab. **IF POSITIVE**, check "Confirmation Only" on lab form.

{X} Sent sample to lab for confirmation
{ } Did not send sample to lab

## Part III-Response to Positive Results

NO NEW USE

{ } Agree    {X} Disagree and deny having used illicit drugs.

_____    6-25-12    _____
Defendant/Offender    Date    Monitoring Official

# Chain of Custody for Drug Analysis
## Federal Pretrial Services

**Alere Toxicology Services, Inc.**
1111 Newton St., Gretna, LA 70053
(504) 361-8989 (800) 433-3823




**Specimen Number:** B02060292

**Account Number:** 065000015

B02060292

### Results Name & Address
TENNESSEE MIDDLE
- PRETRIAL NA
150 NINTH AVENUE SOUTH
SUITE A725
NASHVILLE, TN 37203

065000015

### Tests Ordered (Check all that apply)
- [ ] Primary Test Panel
- [ ] Secondary Test Panel
- [ ] Special Test Panel
- [x] Confirmation Only (specify) THC
- [ ] Individual Special Tests (specify)

## SPECIMEN ID INFORMATION

Case Officer Initials: DBW  Date Collected: 06/25/12

Collector's Name: BILL LORD

- [ ] 01 Officer
- [ ] 02 Treatment Program
- [x] 03 Other DPA

Offender/Defendant Last Name: PARKHURST
First Name: LARRY
PACTS No.: 21369
Onsite/Test ID:

**Reason for Specimen**
- [ ] 01 Presentence Report
- [x] 04 Urine Surveillance
- [ ] 02 Substance Abuse Treatment
- [ ] 05 Pretrial Report
- [ ] 03 Mental Health Treatment
- [ ] 06 Other (specify)

## MEDICAL QUESTIONNAIRE
Medicine(s) Name | Reason for Use | Date Used

### Offender/Defendant Certification
I certify the specimen I have provided on this date is my own and has not been adulterated. The specimen bottle was sealed in my presence. I have verified that the specimen number of the form, the barcode, and the specimen security seal are identical.

Offender/Defendant Signature | Date

### Specimen Collector Certification
I certify I collected the specimen identified by the specimen number on this form in accordance with the required collection procedures. I certify I applied the numbered security seal and barcode to the specimen bottle in the offender/defendant's presence. I have verified that the specimen number on the form, the barcode, and the specimen seal are identical.

Collector's Signature  6-25-12  | Date

### Specimen Transfer Certification
I certify I prepared for transfer to Testing Laboratory the specimen identified by the specimen number on this form and have verified the identity of the specimen with its collection chain of custody documentation. I certify I applied the numbered security seal and barcode to the specimen bottle. I have verified the specimen number on the form, the barcode, and specimen security seal are identical.

Transferer's Signature | Date

## COLLECTOR INSTRUCTIONS
* **COMPLETE** - Specimen ID Information before collection
* **COLLECT** - Specimen in accordance with Administrative Procedures
* **AFFIX** - Security Seal and barcode to specimen bottle as illustrated above
* **ASK** - Offender/Defendant to verify bottle was sealed in his/her presence
* **INITIAL** - Initial security seal and enter date collected
* **ASK** - Offender/Defendant to read, sign, and date Offender/Defendant Certification
* **SIGN** - Specimen Collector Certification after sealing specimen bottle and applying security seal

9315286914



Form # 2004B